**William E. BROCK, Secretary of Labor, U.S. Department of Labor, Plaintiff-Appellee,**

v.

**EL PASO NATURAL GAS COMPANY, Defendant-Appellant.**

No. 86–1845.

United States Court of Appeals, Fifth Circuit.

Sept. 4, 1987.

Grambling & Mounce, Kenneth R. Carr, Steven L. Hughes, Harold H. Young, Jr., Office of Gen. Counsel, El Paso Natural Gas Co., El Paso, Tex., for defendant-appellant.

Linda Jan S. Pack, U.S. Dept. of Labor, William J. Stone, Washington, D.C., for plaintiff-appellee.

Before RUBIN, GARZA, and JONES, Circuit Judges.

GARZA, Circuit Judge:

The question presented in this case is whether El Paso Natural Gas Co. withheld payment of overtime compensation allegedly due certain employees. The Secretary of Labor filed suit to recover compensation for periods of "on-call" time outside of the employees' regular working hours. The district court granted relief. We reverse.

## BACKGROUND

The parties stipulated to the relevant facts.[1] El Paso operates an interstate natural gas pipeline system which crosses West Texas, New Mexico, and Arizona, and this proceeding involves employees located at 22 satellite pumping stations along that system. These stations are located in isolated areas several miles from the nearest community. The employees' family homes are located at the employment site, and each home has an alarm system connected to the satellite station. Each employee works a regularly scheduled 40-hour work week from 7:30 am to 4:00 pm (with half an hour lunch) five days per week, though the daily shifts are staggered so that the station is manned seven days a week. From 4:00 pm to 7:30 am, El Paso's policy is to have one employee "on-call" to prevent vandalism and theft and to assure safe operation of the satellite station.[2] The employees at each satellite station are given wide latitude to decide among themselves which one will be "on-call" on a particular night. If any problems arise at the station, the alarm in the "on-call" employee's home is activated and the employee is obligated to investigate and correct the problem. Otherwise, the on-call employee is free to eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity, alone or with his family, as long as he is within hailing distance of the alarm and the station.[3]

---

1. A more detailed explanation of the facts appears in the district court's memorandum opinion. 644 F.Supp 1202 (W.D.Tex.1986).

2. With only two exceptions, each of the satellite stations is manned by a two- or three-person crew; one facility has four employees and one other station has five. A satellite pumping station crew is supervised by the Complex Superintendent at the "mother station" (the regional office).

3. As a practical matter alarms are rare: employees generally are able to sleep eight hours a night and relax with their families at home.

El Paso has a well-defined overtime compensation plan, but employees on-call are not paid wages or overtime for the entire on-call period. If an employee is actually called out to work by an alarm, he is fully compensated for all time actually worked. If an on-call employee needs or desires to leave the satellite station for any reason and cannot get another employee on-site to replace him, then the employee can call the mother station and obtain relief; the employee will be paid overtime for any time he spends waiting for a replacement.[4] All overtime is rounded up to the next highest hour for compensation purposes.

An assignment to a satellite station is a highly regarded position with El Paso. Each individual employed at a satellite station voluntarily sought and accepted transfer to the rural posts. Also, at the time of the initial assignment to a satellite station, each employee understood that, except in cases of personal emergency, El Paso expects that at least one employee will be at the site at all times. There is no dispute that the employees involved in this case have been paid overtime compensation in accordance with the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et. seq.*, for all time actually spent responding to alarms. The dispute centers on the periods beyond the employees' regular working hours when they are on-call at the satellite station.

The Secretary of Labor filed a civil action against El Paso to enjoin alleged violations of section 15 of the FLSA (29 U.S.C. § 215) and to obtain payment of overtime compensation for all unpaid "waiting time" provided by on-call employees. The parties stipu-

lated that an agreement on overtime compensation existed between El Paso and its employees: each employee volunteered for a satellite station position knowing that only time actually spent responding to an alarm was compensable overtime, a policy which has been continuously posted on the bulletin board at every satellite station since May 29, 1979. The district court made no explicit finding as to whether this agreement was reasonable or complete so as to preclude an action for overtime compensation. The district court did specifically find that El Paso passed both the subjective "good faith" test and the objective "reasonable belief" test in refusing to award liquidated damages under 29 U.S.C. § 260 since El Paso believed its compensation policies were in accordance with the law and consistent with Department of Labor regulations. Nevertheless, the district court granted judgment for approximately $7.7 million[5] against El Paso for "willful" violations[6] of the FLSA because the employees at satellite stations were not "waiting to be engaged" but rather "engaged to wait" and, therefore, entitled to overtime pay. El Paso disputes that conclusion in this appeal.

## DISCUSSION

■ The parties disagree on the standard of review to be applied in this case. Since the parties stipulated to the relevant facts, the district court stated that "only questions of law are presented for decision by the Court." 644 F.Supp at 1205. Fed. R.Civ.P. 52(a) applies only to findings of fact, so El Paso suggests we review *de novo* the conclusions of law propounded by

---

4. An employee can also leave the station on a "personal emergency" without waiting for relief, though the term "personal emergency" is not defined.

5. The overtime compensation awarded all employees totalled $5,203,522.37, together with interest in the amount of $2,495,101.94 through July 15, 1986. The back pay awards for individual employees ranged from $1,814.47 to $199,846.83, depending on how long the employee worked at a satellite station.

6. The district court's finding of "willful" violations of the FLSA was made for statute of limi-

tations purposes by using the "in the picture" standard set forth in *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.) *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). However, the *Jiffy June* standard of willfulness is no longer controlling due to the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). *See Peters v. City of Shreveport,* 818 F.2d 1148 (5th Cir.1987). Our disposition of this case renders the district court's conclusion on the statute of limitations issue moot.

the district court. The Secretary says that the question of whether an employee is entitled to overtime compensation for "waiting" or "on-call" time is a question of fact. Therefore, the district court's conclusion may be set aside only if it is clearly erroneous. According to the Secretary, although the district court termed this case "a close call," it was a call for the district court to make and should not be casually overturned on appeal.

The text of Rule 52 states that: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed.R. Civ.P. 52(a). "Rule 52 'does not make exceptions or purport to exclude categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous.'" *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (quoting *Pullman Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982)). In fact, the Supreme Court specifically considered a claim for exemptions from the FLSA in *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986), and stated that "the facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the court of appeals pursuant to Rule 52(a), like the facts in other civil bench-tried litigation in federal courts." *Worthington,* 106 S.Ct. at 1529. *Accord, Marshall v. Partida,* 613 F.2d 1360 (5th Cir.1980) (district court reversed in FLSA case because finding was clearly erroneous). Thus, the clearly erroneous standard of Rule 52(a) governs our review of the inferences which the district court has drawn from the stipulation of facts. *See also Valley Cement Industries v. Midco Equipment Co.,* 570 F.2d 1241, 1243 (5th Cir.1978) (appellate role is limited "even in reviewing factual inferences ... drawn from undisputed basic facts").

■ Two Supreme Court cases, *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944) and *Skidmore v.*

*Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944) form the foundation of our analysis here. In *Wantock,* the Court found that private firefighters employed overnight as "fire guards" were within the overtime provisions of the FLSA since "these men were required to be on the employer's premises, to some extent amenable to the employer's discipline, subject to call, but not engaged in any specific work." *Wantock,* 323 U.S. at 128, 65 S.Ct. at 166. The court found that no single test could conclusively determine the applicability of the FLSA in each instance because "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." 323 U.S. at 133, 65 S.Ct. at 168. In *Skidmore,* the Court reversed the lower court's decision that the firefighters on 24–hour call were not covered by the FLSA. The crucial question was whether the employee was "engaged to wait" or "waiting to be engaged." *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163. "We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the [FLSA] is a question of fact to be resolved by appropriate findings of the trial court." 323 U.S. at 136–37, 65 S.Ct. at 163. However, the Court did attempt to determine if a reasonable agreement existed between the employer and employees. This judicial inquiry into the compensability of waiting time:

> involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service and its relation to the waiting time, and all the surrounding circumstances.... The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was. 323 U.S. at 137, 65 S.Ct. at 163.

Two recent Fifth Circuit cases have passed on the "waiting time" issue.[7] *See Allen v. Atlantic Richfield Co.,* 724 F.2d 1137 (5th Cir.1984) (*ARCO*) and *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245 (5th Cir.1986), *rehearing denied,* 812 F.2d 971 (1987). In *ARCO,* 22 security guards were required to work twelve (12) hour shifts during a strike by production employees. ARCO required the guards to remain within the confines of the refinery during their 12 hour off-duty period, and the company paid the guards only for actual work done during the off-duty time— otherwise the off-duty time was not compensable. The guards were provided food and shelter and were "free to utilize various recreational facilities which were provided" off-duty employees. *ARCO,* 724 F.2d at 1134. This Court upheld a jury verdict which found that: 1) the security guards failed to prove their off-duty time was work time; and 2) an agreement existed between ARCO and the guards which stated that "off-shift" time would not be compensated. Thus, "in light of the specific facts of this case, [the guards] failed to carry their burden of proving the [off-shift] time was work time." *Id.* at 1137. In *Teledyne* the employees spent seven full days working and living on barges and then had seven days off. All employees were required to remain on the barges during their seven day "hitch," even when off-duty, although the employees received compensation only for the time spent in active labor. The district court found that "Teledyne and the employees operated under an agreement that the employees would only receive compensation for hours spent in physical labor." 805 F.2d at 1248. Since the off-duty time was spent pursuing various amusements (sleeping, eating, watching television and VCR movies, playing ping-pong or cards, etc.), "any benefits derived by Teledyne from the no leave policy do not, on these facts, create a claim for compensable time." *Id.* at 1249.

There are several important comparisons between the case at bar, where the decision went against the employer (El Paso), and the *ARCO* and *Teledyne* cases, where we affirmed a decision in favor of the employer in both instances. First, ARCO's off-duty security guards and Teledyne's barge workers were many miles from home when on-call; El Paso employees spent on-call time with their families in their private residence or surrounding environs. This is a significant distinction between the instant case and *ARCO, Teledyne, Wantock,* and *Skidmore*—all cases where employees were required to stay on the employers' premises *away* from home. *See General Electric Co. v. Porter,* 208 F.2d 805, 816 (9th Cir.1953), *cert. denied,* 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954) (important distinction between employees "required to leave their homes" for on-call duty and employees "who make their homes on their employer's premises"). El Paso employees have much greater freedom to enjoy their on-call time than the employees in *ARCO, Teledyne, Wantock* and *Skidmore.* Second, although ARCO's guards and Teledyne's barge employees could not leave the premises, El Paso employees can leave the site at will if they have traded on-call time with another employee or simply made a request of the company. Since all of the employees in *ARCO* and *Teledyne* were required to be available to respond to a call at any time, there was no opportunity for them to trade their on-call responsibilities. El Paso employees have great flexibility in scheduling on-call time inasmuch as they may relieve themselves of the on-call obligation whenever they choose to do so. Third, the parties stipulated that alarms are infrequent. Thus, El Paso's employees are relatively free to use on-call time however they desire, a better position than the employees in *ARCO* and *Teledyne.* The majority of the time an employee's on-call duty does not interfere at all with normal activities in and

7. This court was also faced with the "waiting to be engaged" issue in *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261 (5th Cir.1987), but the *Halferty* court did no more than remand the "waiting time" issue back to the district court, because of the district court's failure to make explicit findings. Without such findings, we have no basis upon which to review [the waiting time] issue and therefore must remand ..." *Id.* at 270.

around the home. Finally, the parties also stipulated that El Paso's overtime compensation policy constituted the "working agreement" between the satellite station employees and the company. The existence of "such an agreement [is] a circumstance to consider in determining whether the off-duty time" is spent primarily for the employee's or employer's benefit. *ARCO*, 724 F.2d at 1136. Each El Paso employee volunteered for a position at a satellite station completely aware of the company's overtime compensation policy. We have previously held that the "continuance of employment can be evidence of an implied agreement to the terms of that employment." *Teledyne*, 805 F.2d at 1248. Thus, in every significant respect, the employees' "waiting time" here gives them greater flexibility and more personal freedom from employer demands than the employees in *ARCO* and *Teledyne*.

The Secretary does not even attempt to distinguish *ARCO* and *Teledyne*. Instead, the Secretary calls the determination of compensability for on-call time "heavily fact-dependent" and argues that the facts in *ARCO* and *Teledyne* are of "little practical significance in resolving the issues at hand." We emphatically disagree. *"Stare decisis* means that like facts will receive like treatment in a court of law." *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir.1985). Although each "waiting time"

case will have facts unique unto itself, the guidance available from previously decided cases is important. The district court here stated that "[t]he factual distinctions between the [*ARCO*] case and the instant case seem obvious," 644 F.Supp. at 1208, but we find the "obvious" distinctions advanced unpersuasive.

The district court first noted that the overtime schedule of 12–hour work days and 12 hours of off-shift waiting time was temporary since the strike lasted only three months. This circumstance is irrelevant. Compliance with the FLSA is not excused for even temporary periods of time. The *ARCO* opinion itself places no weight on the length of the guard's employment. The second proffered distinction is that the agreement between the employer and employees in *ARCO* was negotiated through a collective bargaining agent. This fact is inconsequential since both parties here stipulated that a "working agreement" existed between El Paso and the satellite station employees. The relevant consideration is not how the agreement was arrived at, but whether an agreement in fact exists, what the agreement provides, and whether it complies with the FLSA.[8] *See Skidmore*, 323 U.S. at 137, 65 S.Ct. at 163.

## CONCLUSION

El Paso's employees have significant freedom in determining how to use on-call

---

8. Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, provides an employer with a complete defense to an FLSA proceeding when the employer has acted in good faith in conformity with a written administrative regulation, order, ruling, administrative practice or enforcement policy of the Secretary of Labor. One such regulation is 29 C.F.R. § 785.23, which reads:

> Employees residing on employer's premises or working at home.
> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and *any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.* This rule

would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home. (citations omitted)(emphasis added).

The parties here stipulated that an agreement existed, but the district court made no explicit finding whether the agreement was reasonable. The district court found that El Paso had both subjective and objective good faith when it decided not to award liquidated damages, but it entered judgment against El Paso on the facts as they pertained to the employees waiting time. The Secretary maintains that El Paso had neither a "reasonable" nor "complete" agreement with its employees if it paid them only for time responding to alarms.

We do not reach the question whether the agreement between the parties was "reasonable" and a complete defense to this proceeding. We note only that "such an agreement [is] a circumstance to consider" in determining whether the waiting time here is for the employer's or employee's benefit. *ARCO*, 724 F.2d at 1136.

time at the various satellite stations. Since the employees here were merely "waiting to be engaged," the on-call time was primarily for the employee's benefit and non-compensable unless actually responding to alarms. The district court's conclusion to the contrary is clearly erroneous.

REVERSED.