John **LURVEY**, et al., Plaintiffs,

v.

**METROPOLITAN DADE COUNTY, Defendant.**

No. 92–1501–CIV.

United States District Court, S.D. Florida.

Oct. 7, 1994.

Sherry C. Dickman, Coral Gables, FL, for plaintiffs.

Carol A. Anderson, Asst. County Atty., Miami, FL, for defendant.

## ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the following motions: (1) Defendant's motion for summary judgment as to Counts I, II, and III, filed May 27, 1993; and, (2) Plaintiffs'[1] motion for summary judgment as to Counts I and III, filed on July 30, 1993. United States Magistrate Judge Stephen T. Brown, upon an order of reference, issued a Report and Recommendation on February 9, 1994, recommending that the Plaintiffs' motion for summary judgment be denied in whole and that the Defendant's motion for summary judgment be granted as to Counts I & III and denied as to Count II. Plaintiffs filed an objection to the Magistrate Judge's Report and Recommendation concerning the recommendation as to both motions on Counts I and III. Neither party filed an objection to the Report and Recommendation as to Count II.

This action arises from a dispute over whether members of the Metro–Dade Police Department's Bomb Disposal Unit are entitled to overtime compensation for "on call" time that the employees spent at home, pursuant to section 7(a)(1) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1). The overtime compensation determination turns upon whether the employees spend their time predominantly for the employer's benefit or for the employee's benefit. For the reasons that follow, we conclude that the Plaintiffs' on-call time was spent predominantly for the employees' benefits as a matter of law under the FLSA. Accordingly, Magistrate Judge Brown's Report and Rec-

ommendation must be and is hereby ADOPTED, the Plaintiffs' motion for summary judgment as to Counts I and III are DENIED, and the Defendant's motion for summary judgment is GRANTED as to Counts I and III and DENIED as to Count II.

## I.

Much of the factual and procedural background of this case is agreed upon by the parties. Plaintiffs are bomb squad technicians employed by the Bomb Squad Division of the Metropolitan Dade County Police Department. The Bomb Squad Division is made up of five technicians, each of whom is trained in the handling and disposal of explosives. The range of emergency situations to which the bomb squad must respond is broad and includes investigating the following: (1) live bombs or improvised explosive devices; (2) bombings; (3) suspicious packages; (4) unclassified explosions involving death, bodily injury, or property damage; and (5) various activities involved in the protection of dignitaries. Furthermore, in investigating the above-mentioned possible threats, primary responsibilities for the Bomb Squad members also include: (1) rendering the premises safe from what appears to be a bomb or other explosive device; (2) recovering explosives and incendiary materials; (3) responding to bomb threats considered authentic and and potentially dangerous; and (4) collecting and identifying evidence from past blast situations. Because of the emergency nature attendant to a number of these situations and responsibilities, Bomb Squad members must remain in a continuous state of readiness.

As part of their job duties, Plaintiffs were required at certain times to perform on-call duties while at home. Plaintiffs contend that they are entitled to additional overtime compensation for hours spent in their on-call status from July of 1988 through July of 1991. During the time period in question, Plaintiffs worked regular duty hours of eight hours per day, Monday through Friday. Additionally they were required to be on call for

---

1. Plaintiffs include John Lurvey, Michael McAlhany (added by Order of June 24, 1993), and Steve Cochran (added by Order of June 24, 1993).

an additional 128 hours per week, every other week.

The compensation terms of the Bomb Squad employees is, at least in part, dictated by the terms of a collective bargaining agreement. The Bomb Squad technicians are members of a collective bargaining unit represented by the Dade County Police Benevolent Association as the exclusive bargaining agent pursuant to Chapter 447 of the Florida Statutes. Under that agreement, if Plaintiffs were actually called to work during an on-call period, they would be paid overtime compensation from the time of the call. Moreover, Plaintiffs were guaranteed four hours of overtime compensation for each call received—even if the call actually required less than four hours of duty—so long as that particular call was separated from scheduled working hours by more than one hour.

The terms of the on-call time required that Plaintiffs remain at home while on call with their equipment and van nearby to insure a quick response if called by a dispatcher.[2] The only restriction on these activities while remaining on call at home was that Plaintiffs not consume alcoholic beverages. Otherwise, Plaintiffs could do any other activities that they wished to do while at home. Furthermore, Plaintiffs were, of course, able to take vacations during which they were totally excused from work.

The frequency of call-outs while Plaintiffs were on duty averaged less than one call per week. As Magistrate Judge Brown observed:

> [s]worn documentation from the log book of plaintiff Lurvey indicates that between July 1989 and July 1991 he handled a[ ] total of 123 call-outs. Of those[,] 26 required four hours or more of his time.

Report and Recommendation, p. 2. However, more than fifty percent of the calls to which the Bomb Squad members responded were during periods in which the technicians were on call. It was from Lurvey's log books

from which Magistrate Judge Brown calculated—and to which calculation neither party objects—that the average number of call-outs per week was less than one.[3] For purposes of the motions for summary judgment, the parties agree that as a practical matter it was difficult for technicians to trade on-call hours. Finally, no member of the Bomb Squad was ever disciplined for failure to respond appropriately while in the on-call status.

As it presently stands, Plaintiffs allege the following in a combination of amended complaints:

Count I: Plaintiffs allege that Defendants have violated Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* through failure to compensate them for "on-call" time served during off-hours.

Count II: Plaintiff Lurvey alleges that Defendant has been retaliating against him, in violation of 29 U.S.C. § 215(a)(3), for filing this lawsuit.

Count III: Plaintiffs seek permanent injunctive relief against Dade County for alleged violations of 29 U.S.C. §§ 206, 207—asking the Court to issue permanent injunctive relief prohibiting Dade County from engaging in any future violations of the overtime provisions sued over in this case.

Defendant filed a motion for summary judgment as to each of these three counts. Plaintiffs responded by filing a motion for summary judgment as to Counts I and III. In a Report and Recommendation on the motions, Magistrate Judge Brown recommended that the Plaintiffs' motion for summary judgment be denied in whole and that the Defendant's motion for summary judgment be granted as to Counts I & III and denied as Count II. Plaintiffs filed a timely objection to the Magistrate Judge's Report and Recommendation concerning the recommendation as to both motions on Counts I and III. Neither party filed an objection to the Report and Recom-

---

2. As Magistrate Judge Brown noted, beginning on June 7, 1991, the on-call requirements were altered so that personnel on-call were no longer required to remain at home, but instead were allowed to carry and respond to pager (or beeper) notification.

3. Defendant calculated the frequency of call-outs to vary from none to six a week and average 0.76 over the entire period. *See* Def.'s Mot. Summ.Judg. p. 3–4.

mendation as to Count II. We now turn to the merits of each motion for summary judgment.

## II.

## A.

■ The standard to be applied in reviewing summary judgment motions is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there. is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991 [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed

facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Protective Systems, Inc.],* 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

■ The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252, 106 S.Ct. at 2512. In

determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

### B.

The Fair Labor Standards Act addresses compensation of on call time at only the most general of levels. *See* 29 U.S.C. § 207(a)(1). That provision requires employers to pay overtime compensation for hours worked beyond the forty-hour work week:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Two Supreme Court decisions interpreting the FLSA, however, have established what is commonly referred to as the "waiting to be engaged" doctrine. Both *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), *reh'g denied*, 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), involved private firefighters as plaintiffs who were required to spend about half their time off in the defendants' dormitories so that they would be able to respond quickly to alarms. In both cases, the Supreme Court declined to offer any black and white rules for determining under what circumstances overtime compensation should be awarded for on call time. As the Ninth Circuit recently summarized the two cases:

> The Supreme Court has held that time spent waiting for work is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Armour*, 323 U.S. at 132 [65 S.Ct. at 168]. "Whether time is spent predominantly for the employer's benefit [is] dependent upon all the circumstances of the case." *Id.* at 133 [65 S.Ct. at 168]; *accord Skidmore*, 323 U.S. at 140 [65 S.Ct. at 164]. For example, facts may show that the employee was "engaged to wait," which is compensable, or they may show that the employee "waited to be engaged," which is not compensable. *Skidmore*, 323 U.S. at 137 [65 S.Ct. at 163].

*Owens v. Local No. 169*, 971 F.2d 347, 350 (9th Cir.1992).

The United States Department of Labor has built upon these Supreme Court cases in promulgating regulations for determining whether on-call time is compensable under § 207(a)(1). For example, 29 C.F.R. § 553.221(d) provides:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. *Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits.* Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

(emphasis added). Furthermore, 29 C.F.R. § 785.17 provides:

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave at word at his home or with company officials where he may reached is not working while on call. (*Armour & Co. v. Wantock*,

323 U.S. 126 [65 S.Ct. 165, 89 L.Ed. 118] (1944); *Handler v. Thrasher*, 191 F.2d 120 (C.A. 10, 1951); *Walling v. Bank of Waynesboro, Georgia*, 61 F.Supp. 384 (S.D.Ga.1945)).

With all of these sources from which to work, lower federal courts have built a substantial body of case law providing factors that are important to determining whether the on-call time in a particular case is compensable. All the federal courts that have addressed the issue have held that the two most important factors to consider are (1) the degree to which the employee is free to engage in personal activities and (2) the agreements between the parties. *See, e.g., Owens*, 971 F.2d at 346; *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 677 (5th Cir.1991) (en banc), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). The Eleventh Circuit has recently phrased the factor test as follows:

> When deciding whether on-call time is covered by the FLSA, the court should examine ... [1] the agreements between the particular parties, [2] appraisal of their practical construction of the working agreement by conduct, [3] consideration of the nature of the service, and its relation to the waiting time, and [4] all of the surrounding circumstances.

*Birdwell v. City of Gadsden*, 970 F.2d 802, 808 (11th Cir.1992).

Shortly after the Eleventh Circuit's opinion in *Birdwell*, the Ninth Circuit offered a comprehensive list of sub-factors to consider when trying to determine the degree to which the employee is free to engage in personal activities. These factors include: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. *Owens*, 971 F.2d at 351. "Such

a list is illustrative, not exhaustive. No one factor is dispositive." *Id.* at 351.

Before turning to the application of such factors to the circumstances of this case, we pause initially to note the manner in which courts have addressed motions for summary judgment when there is some form of factual dispute between the parties. As might be expected, this issue arises repeatedly due to the numerous factors and circumstances that a court considers. The basic question is this: whether the court can only grant summary judgment for a party where *all* the factors cut in favor of the moving party? Courts have consistently held that the moving party need not show that every factor works in his favor, and that it is for the court to determine as a question of law whether a certain set of facts constitutes work under the FLSA. The Eleventh Circuit addressed this issue at some length in *Birdwell*:

> *Whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law. Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir.1991) (en banc ). *Stare decisis* means that like facts will receive like treatment in a court of law. *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 374 (5th Cir.1987).
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Since it is indeed possible that, under certain sets of facts, on-call time could be working time under the FLSA, and since [the Supreme Court in *Skidmore* ] could set down a "single legal formula to resolve" all cases, the Court directed the lower courts to examine the particular facts in each case. [*Skidmore v. Swift & Co.*, 323 U.S. 134, 136, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944) ]. But the Court could not have meant, as the Fifth Circuit discussed, "that the *same* set of facts may lead to different results, but rather [meant] that the different facts of discrete cases may produce different results." *Bright*, 934 F.2d at 675. Certain sets of facts, if found by a fact finder, will give rise to liability under FLSA while other sets of facts will not. *It is for the court to determine if a set of facts gives rise to*

*liability; it is for the jury to determine if those facts exist.*

*Birdwell,* 970 F.2d at 807–08 (emphases added); *see also Jackson v. City Council,* 841 F.Supp. 1214, 1219 (S.D.Ga.1993); *LaPorte v. General Elec. Plastics,* 838 F.Supp. 549, 554 (M.D.Ala.1993). Another case effectively demonstrating this point was recently decided by the Sixth Circuit:

The plaintiffs contend that the district court erred by resolving disputed issues of fact in favor of [the defendant employer in granting the defendant's motion for summary judgment]. Specifically, the plaintiffs argue that the district court erroneously concluded that the on-call policy has not changed the plaintiffs' lifestyles.

We agree that the plaintiffs' affidavits and depositions are sufficient to establish an issue as to whether the on-call policy has changed the plaintiffs' use of their free time. Viewing that evidence in the light most favorable to the plaintiffs, a reasonable juror could find that many of the plaintiffs have given up or curtailed certain activities for fear of missing an emergency call.

However, we find that the plaintiffs' evidence does not establish a genuine issue of *material* fact. The fact that some of the plaintiffs' activities have been affected by the policy is not sufficient to make the on-call time compensable. The plaintiffs must show that the policy is so onerous as to prevent them from effectively using their free time for personal pursuits. That *some of the plaintiffs' personal activities may be affected is not enough* [to defeat the motion for summary judgment].

*Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 611 (6th Cir.1992) (emphasis in original), *cert. denied,* —— U.S. ——, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

Following the mandate of the Eleventh Circuit in *Birdwell* to apply principles of *stare decisis* in analyzing the facts of the case at hand, we look to other federal cases for guidance in making a legal determination here. We focus, at least initially, on cases that did not involve the use of beepers or other methods allowing the possibility of significant travel from the home—instead, the employee was required to stay physically at or near home, as here. Although, as the Magistrate Judge recognized, none of the reported cases in such situations are on "all-fours" with the facts in this case, they do provide substantial guidance to our resolution of the motions for summary judgment.

In *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir.1987), the plaintiff employees lived in homes on their employer's worksite, a satellite pumping station for a natural gas pipeline. Aside from working an eight hour day, each plaintiff employee would occasionally serve on-call duty to prevent vandalism and insure safe operation of the station. If a problem arose, an alarm in the on-call employee's home would sound and that employee would have to immediately respond to the alarm to investigate and correct whatever problem arose. Aside from these responsibilities, "the on-call employee [was] free to eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity, alone or with his family, as long as he is within hailing distance of the alarm and the station." *Id.* at 370. Accordingly, it was apparent from these facts, that the employee had no beeper and was required to stay close to home to await an on-call situation.

The Fifth Circuit reversed the district court's judgment for the plaintiffs and held, as a matter of law, that the plaintiffs could not be awarded overtime compensation for their on-call time at home. The Court cited to a number of factors in determining that the plaintiffs were not entitled to overtime compensation, including (1) that an employee serving on-call duty was "with their families in their private residence or surrounding environs," and were "relatively free to use on-call time however they desire," (2) that an employee could remove himself from duty often by calling another employee or the station for relief, (3) the alarms were infrequent in nature, and (4) the compensation policy established at the company did not compensate for the on-call duty unless an employee actually responded to an alarm, and such a working agreement indicated that overtime compensation was not warranted. *Id.* at 373.

Similarly, in *Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir.1989), the Fifth Circuit reversed the district court's judgment in favor of the plaintiff employees on the ground that, as a matter of law, they were not entitled to overtime compensation for their on-call activity. In *Halferty,* plaintiff employee was a telephone dispatcher who was required to remain at home and answer telephone calls from 5:00 p.m. to 8:00 a.m. five nights per week. On average, she received a "small number" of calls each night, but otherwise was allowed to pursue personal, social and business activities at home. *Id.* at 1187. The Fifth Circuit held that plaintiff's on-call work was not entitled to compensation, observing:

> These [Labor Department] regulations [29 C.F.R. §§ 785.14–.17 (1987) ] make clear that the critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes. [29 C.F.R. §§ 785.16–.17]. The facts show that Halferty could visit friends, entertain guests, sleep, watch television, do laundry, and babysit. We, therefore, conclude that she could use the time for her own purposes and that she is not entitled to compensation for her idle time under the waiting to be engaged doctrine.

*Halferty,* 864 F.2d at 1189.

The primary example of an on-call duty while being limited to home or near home that merited a finding of "waiting to be engaged" is found in *Cross v. Arkansas Forestry Commission,* 938 F.2d 912 (8th Cir.1991). In *Cross,* the plaintiff employees were dispatchers, rangers, towermen, and forest trainees who engaged in fire protection activities for their employer, the Arkansas Forestry Commission. The plaintiff employees were required to monitor hand-held radios twenty-four hours per day during on-call periods and respond immediately to emergencies. The Eighth Circuit found that the plaintiffs were entitled to compensation pursuant to 29 U.S.C. § 207(a), for a number of reasons including geographical restrictions, but stressed that what set the facts of the case apart from other reported cases in the past was the degree of involvement in on-call related duties while waiting at home:

> Furthermore, the facts of this case are unlike typical "on-call" cases in two respects. [Defendant employer] requires the employees to monitor radio transmissions continuously during each work period, rather than contacting them exclusively by telephone or electronic pager. [citations omitted]. Because the radio must be on at all times, the employees' ability to entertain in their homes, attend social gatherings, attend church services or engage in other personal pursuits is limited. The employees' ability to enjoy common activities such as watching television or reading is also decreased because they must devote attention to radio transmissions.

*Cross,* 938 F.2d at 917.

Finally, in *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir.1991), *cert. dismissed,* — U.S. —, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992), the plaintiff employees were firefighter who were on call for 24–hour periods, during which they were required to wear and respond to beepers by returning to work within twenty minutes when called. The Tenth Circuit held that under FLSA the employees were entitled to compensation for the on-call waiting periods, stressing the frequency with which the firefighters were called during a twenty four-hour period: an average of three to five times. Due to the frequency of the calls, the Court concluded that the firefighters could not use the time effectively for personal pursuits.

Even though a brief analysis of these cases reveals that a number of factors played a role in the courts' decisions, a number of conclusions can be drawn and have been drawn by other courts in our situation. In *Martin v. Ohio Turnpike Commission,* 968 F.2d 606 (6th Cir.1992), the Sixth Circuit reviewed the above-mentioned cases, as well as others, and concluded that:

> From our survey of the law in this area, *we conclude that on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits.* The mere fact that an employer requires employees to leave

word where they can be reached will not be sufficient to make the on-call time compensable. Instead, the employees must show that the on-call policy imposes additional burdens that seriously interfere with their ability to use the time for personal pursuits.

For example, the employees may be able to show, like the employees in *Renfro,* that the employer calls them back so frequently as to make effective use of the time impractical. Alternatively, the employees could show, like the plaintiffs in *Cross,* that the employer's on-call system is so distracting or cumbersome as to seriously inhibit personal activities. We do not hold that these two examples are the only ways that employees could meet their burden, but we do find them to be representative of the type of showing that an employee must make to survive a motion [by the employer] for summary judgment.

*Id.* at 611. "[I]t is clear that an employee's free time must be *severely restricted* for off-time to be construed as work time for purposes of the FLSA". *Birdwell,* 970 F.2d at 810 (emphasis added). It is with this background laid out that we now turn more specifically to the facts of this case.

### C.

Magistrate Judge Brown recommended that summary judgment be granted in favor of Dade County as to Counts I and III. Plaintiffs have objected to that recommendation on four grounds:

(1) it fails to properly apply the law to the unique facts of this case; (2) plaintiffs have raised material issues of fact sufficient to defeat the entry of summary judgment; (3) it is based upon the erroneous contention that plaintiffs' argument for compensability is predicated exclusively upon the importance of plaintiffs' work rather than on the restrictions imposed upon plaintiffs by defendant while on-call; and (4) there is an overall failure to consider all of the material facts presented by plaintiff [sic] in its memoranda and supporting affidavits.

Pltffs.' Objs.Rep. & Rec. at 2. The first of these arguments is both the broadest and most basic, and analyzing the application of the law to the facts in this case necessarily encompasses any remaining objections Plaintiffs could have to the Magistrate Judge's Report and Recommendation. Therefore, we proceed with a straightforward application of the law to the facts of this case.

Plaintiffs essentially contend that Magistrate Judge Brown did not consider all of the factors laid out in the numerous cases in this area. Plaintiffs first take issue with Magistrate Judge Brown's assessment of the factors laid out by the Eleventh Circuit in *Birdwell, supra.* As stated above, the Eleventh Circuit requires an examination of "[1] the agreements between the particular parties, [2] appraisal of their practical construction of the working agreement by conduct, [3] consideration of the nature of the service, and [4] all of the surrounding circumstances." *Birdwell,* 970 F.2d at 808. The third and fourth factors are essentially embodied in the seven-factor test established by the Sixth Circuit, *Owens,* 971 F.2d 347, and which Plaintiffs contend were not properly applied by Magistrate Judge Brown. Although we find that the Magistrate Judge properly considered and applied these factors, and the courts have consistently held that none of these factors is dispositive, *e.g., Owens* at 350, we address each factor and the associated facts at this point.

### 1. *On–Premises Living Requirement*

A requirement that the employees remain on the employer's premises during on-call time is one indication that the employee is "engaged to wait," rather than "waiting to be engaged." *See, e.g. Armour,* 323 U.S. at 134, 65 S.Ct. at 169. This factor is emphasized by the Department of Labor's regulations regarding on-call time. *See* 29 C.F.R. § 553.221(d) ("An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call."); *Owens,* 971 F.2d at n. 8. Plaintiffs assert that confinement to a specific location by order of Dade County is tantamount to requiring on-premises living. Pltffs.' Mem. Opp.Def.'s Mot.Entry Final Summ.J. & Supp.Pltffs.' Mot.Entry Final Summ.J. [here-

inafter Pltffs.' Mem.Opp.] at 16. However, the issue of the restrictiveness of the condition is addressed by other factors in this multi-factor test. Therefore, such a conclusion is unwarranted. Plaintiffs are unquestionably at home during their on-call time, a fact they readily admit. *Id.* at 7 ("Bomb Squad Technicians are ordered by their commander to stay at home during the periods during which they are on-call...."). Accordingly, this factor favors the Defendant's argument.

### 2. *Geographical Restrictions*

■ Courts addressing on-call time have also looked to whether there are excessive geographical limitations placed upon employees. *See, e.g. Cross,* 938 F.2d at 916–17. In this regard, Plaintiffs argue that they were required to stay at home without exception. Pltffs.' Mem.Opp. at 16. Defendant concedes that its employees may not leave their homes at all during their on-call times.[4] Def.'s Resp.Pltffs.' Mot.Summ.J. & Reply Pltffs.' Mem.Opp.Def.'s Mot.Summ.J. [hereinafter Def.'s Reply] at 5. We agree with Plaintiffs that this factor works in its favor. However, Plaintiffs further argue that this factor affects and overrides each of the other facts in this balancing test. *See* Pltffs.' Mem.Opp. at 16–20. As no one factor is dispositive, we disagree with their characterization and will address each remaining factor individually.

### 3. *Frequency of Calls*

The frequency with which an employee is required to respond to emergencies while on call has also been considered in determining whether that time is compensable. *See, e.g.*

*Renfro,* 948 F.2d at 1538. The parties do not dispute, and Magistrate Judge Brown indicated, that the frequency of calls is approximately 0.76 per seven-day, on-call work week. Plaintiffs assert, however, that this low frequency is overcome by the fact that they must remain in a heightened state of readiness. Pltffs.' Mem.Opp. at 17–18. Defendant concedes that its employees are under stress when on call because their work "puts them at risk for serious injury or death," and they "cannot fully relax." Def.'s Reply at 5. While this Court agrees that the employees' ability to relax between calls is limited by the stressful nature of the job, they are, nonetheless, called far less frequently than the employees in cases finding this factor to favor compensation for on-call time. For example, the call frequency does not remotely approach that in *Renfro,* 948 F.2d 1529, where firefighters were called an average of three to five times in a twenty-four hour period and sometimes as many as thirteen times. In this case, Plaintiffs are called, on average, less than once a week and at the most six times per week—still less than once per day. Similarly, the level of stress does not approach the state of readiness required of the plaintiffs-employees in *Cross,* 938 F.2d 912, where employee dispatchers were required to closely monitor hand-held radios at all times while on call. Plaintiffs in this case were simply called much less frequently than the employees seeking compensation for overtime call in other cases. *See, e.g., Bright,* 934 F.2d 671 (employee called an average of four or five times per week).[5] Therefore, we find that this factor cuts in Defendant's favor.

---

**4.** We note, however, that deposition testimony shows that certain exceptions to this rule were allowed. For example, Daniel Eydt testified that he was able to use the community pool down the street from his home. Dep. Daniel Eydt at 16. He also testified that he was permitted to work as an off-duty officer at Joe Robbie Stadium and that he used his bomb squad van to get there. *Id.* at 17. Similarly, John Murray stated that he was allowed to attend classes at Florida International University to attain his bachelor's degree and that he was permitted to take the "bomb vehicle" with him. Dep. John Murray at 30. Therefore, it appears that exceptions were made to the rule requiring bomb squad members to stay at home at all times. However, as Defen-

dant has conceded that, as a general rule, bomb squad members were required to stay at home while on-call, we consider that to be the norm.

**5.** Plaintiffs argue that "*none* of the cases cited by the Magistrate involves a situation, like here, where the plaintiffs were *ordered to stay at home without exception or relief.*" Pltffs.' Obj.Rep. & Rec. at 7 (emphasis in original). Therefore, they apparently argue, no case may be relied upon for guidance. We agree with Plaintiffs' contention that no case is directly on point. Nonetheless, some comparison to other, similar circumstances is helpful in evaluating the facts of this case.

### 4. Response Time

A short, fixed time for response during on-call hours is another indication that employees are unable to use their on-call time to engage in personal activities. *See, e.g. Bright,* 934 F.2d at 678. Plaintiffs assert that the emergency nature of bomb-related incidents mandates a prompt response time. Pltffs.' Mem.Opp. at 7. In addition, one of the undisputed facts enumerated by Defendant states, in part, that "the nature of [Plaintiffs'] work places a premium upon prompt response...." Def.'s Reply at 5.[6] Accordingly, this factor weighs in favor of Plaintiffs' argument.

### 5. Trading On–Call Time

If on-call employees can trade responsibilities among themselves, then the curtailment of personal activities may be somewhat alleviated. *See, e.g. Brock,* 826 F.2d at 373. As a practical matter, Plaintiffs assert, it is quite difficult for technicians to trade on-call hours. Pltffs.' Mem.Opp. at 9. In addition, Plaintiffs argue that this fact is in dispute. However, the parties have agreed, for purposes of these motions, exactly what Plaintiffs allege—that it is difficult to trade on-call responsibilities. Jt.Pretrial Stip. at 6 ¶ 13. In addition, Plaintiff Lurvey's own deposition testimony states that if another squad member is closer to the scene, squad members may ask the other technician to handle the call. Dep. Lurvey at 68. While this exchange may not be frequent or convenient, it is at least available at some level. Therefore, there is no factual dispute with respect to this factor. The parties merely disagree on the effect of these facts on our determination. We find this factor neutral.

### 6. Use of a Pager

There is no dispute over this factor. Plaintiffs were, without exception, forbidden

from using pagers to spend any significant time away from home.[7] Accordingly, this factor favors Plaintiffs' argument.

### 7. Actual Engagement in Personal Activities

This element of the test, whether employees were actually able to engage in personal activities during their on-call time, is crucial to the determination. *See Birdwell,* 970 F.2d at 807 ("The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities.") (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 138, 65 S.Ct. 161, 163–64, 89 L.Ed. 124 (1944)). Plaintiffs argue that they were unable to engage in any personal activities during their on-call time because they were unable to leave their homes for any reason during that time. Pltffs.' Mem.Opp. at 17–20. Plaintiffs provide a laundry list of activities in which they cannot participate while on call:

> They cannot engage in even the most fundamental personal pleasures such as seeing a movie, going shopping, or eating out at a restaurant. They certainly cannot engage in activities such as boating, fishing, sports, going to the beach, watching their children in school plays, or attending the university in an effort to continue their educations.

*Id.* at 18. Plaintiffs further allege that this factor is irrelevant once the determination has been made that they are unable to leave their homes. They argue that there can be no pursuit of personal activities whatsoever unless employees "have some degree of freedom to exercise those personal pursuits." *Id.* at 20.

However, Plaintiffs again place too much emphasis on the second factor—geographical

---

6. Although Defendant does not argue this point, we note that Daniel Eydt testified that he moved to Davie during his employment with the bomb squad and that it occasionally took him as much as forty-five minutes to reach the location to which he was called. Dep. Daniel Eydt at 7–9.

7. However, two bomb squad members testified that they were able to use a pager to go outside the range of their phones, and even up to a half-

mile away from their homes. Dep. Daniel Eydt at 15–16; Dep. John Murray at 28–29. In addition, at least one member of the bomb squad used a pager to allow him to go to a community pool. Dep. Daniel Eydt at 16. Nonetheless, it is undisputed that bomb squad members were not permitted to use pagers to go further from their bomb vehicles.

restrictions—in discussing the effect of this separate factor. As we already stated, no one factor is dispositive. Moreover, other courts faced with plaintiffs' inability to leave their homes have not passed over this factor in making their determinations. *See, e.g., Brock,* 826 F.2d at 373 (stating that employees required to remain at home during on-call time actually engaged in personal activities, including, for example, spending time with their families).

In addition, Plaintiffs' own depositional testimony shows that they were fully able to engage in household chores, spend time with family, watch television, read, use exercise equipment, and entertain guests, among other things. *See* Lurvey Dep. at 57–60; Cochran Dep. at 24–25. In addition, record evidence shows that some bomb squad members were able to leave their homes to go short distances, to attend classes, or to work as an off-duty officer. Dep. John Murray at 30; Dep. Daniel Eydt at 15–17. In fact, the exact example Plaintiffs give of an activity in which they could not participate—furthering their educations—was in fact undertaken by a bomb squad technician. Dep. John Murray at 30. Thus, Plaintiffs were able to engage in personal activities while on call. Accordingly, we find that this factor favors the Defendant's argument.

Having addressed the second two elements set out by the Eleventh Circuit in *Birdwell, supra,* we now turn to the first two factors, both of which involve an analysis of the parties' agreements regarding compensation for on-call time. Plaintiffs argue that no agreement existed with respect to on-call time. *See* Pltffs.' Mem.Opp. at 9. In their objection to Magistrate Judge Brown's Report and Recommendation, Plaintiffs state,

> [P]laintiffs became members of the Bomb Squad Unit before the County became subject to the requirements of the FLSA. Furthermore, as demonstrated by the Supplemental Affidavit of Robert Willis, the plaintiffs were unaware of their entitlement to overtime wages under the Act until mid–1991 when a[n] inter-office memorandum, which was not directed to them, anonymously made its way to the mailbox of their commanding officer. Once advised

of their rights under the FLSA, as evidenced by the Affidavit, plaintiffs *immediately* asserted their entitlement to compensation against the County, and did not cease their efforts until an impasse was reached, at which time this action was commenced.

*See* Pltffs' Obj. to Rep. & Rec. at 8–9 (emphasis in original). Plaintiffs further assert that Magistrate Judge Brown improperly drew factual inferences regarding agreements between the parties. *See id.* However, courts have held that whether the existence of certain facts gives rise to an agreement is an issue of law to be determined by the court. *See, e.g., Owens v. Local No. 169,* 971 F.2d at 354–55 (finding, at summary judgment stage, existence of an agreement as evidenced by plaintiffs' conduct in continuing to work under the employer's terms). Moreover, the Eleventh Circuit requires this Court to examine the actual agreements between the parties and to construe the agreement giving recognition to a "working agreement by conduct." *Birdwell,* 970 F.2d at 808 (quoting *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163).

Accordingly, we look to both the contracts in existence and the conduct of the parties in determining whether agreement existed with respect to compensation of on-call time. Both parties agree that Plaintiffs were, in fact, operating under a collective bargaining agreement during the time in question. In addition, there is no dispute that the bargaining agreement provided for payment of four hours' compensation when Plaintiffs were actually called away from home during their on-call schedules, as long as the call did not come within an hour of the employee's scheduled shift. Record evidence shows that this same agreement existed for on-call employees with a variety of duties, and that this provision was not meant to override the FLSA. Affid. Michael Braverman ¶¶ 6–7. Nonetheless, the contract still shows that an agreement as to compensation for on-call time existed between the parties. Plaintiffs' argument amounts to a statement that because the collective bargaining agreement did not provide compensation for the *entire* on-call period, it does not address the on-call

period at all. However, the four-hour payment system is plainly a compromise of differing interests. It lies somewhere between full compensation for on-call time and payment solely for hours worked. As such, it is a practical compromise by which both sides agreed to be governed. Furthermore, Plaintiffs, although they have filed a lawsuit, showed their agreement to these terms of employment by their continued employment with the bomb squad. *See Owens,* 971 F.2d at 354–55. All of the Plaintiffs were aware of these working conditions, and none asked for transfer from the unit. We find, as a matter of law, that these facts amount to an agreement between the parties regarding compensation for on-call time.

█ Furthermore, even if no agreement between the parties existed, we find, as a matter of law, that the conditions placed upon Plaintiffs' on-call time were not so onerous as to mandate compensation. *See Birdwell,* 970 F.2d at 810. Of the seven factors indicating the extent to which Plaintiffs were able to use on-call time for personal activities, three weigh in Plaintiffs' favor—(1) the geographical restriction to the home area; (2) the limited time for response; and (3) the inability to use a pager. Of the remaining four elements, three strongly support Defendant's argument that Plaintiffs' on-call time is able to be used for personal activities: (1) Plaintiffs spend their on-call time at home; (2) the call frequency is very light; and (3) Plaintiffs actually used their free time to engage in personal activities. The remaining factor—the ability to trade on-call duties—does not weigh strongly in either direction.

More importantly, however, the two most crucial factors both favor Defendant's argument: Plaintiffs are able to spend their on-call time away from the employer's premises, and record evidence shows that they actually engage in a wide range of personal activities while on call. Despite their arguments to the contrary, deposition testimony reveals that bomb squad members were able to read, watch television, rent movies, spend time with family, and even hold part-time jobs or attend school away from their homes. Plaintiffs were required, as a general rule, to stay

at home when on call. Nonetheless, the controlling precedent and the developing caselaw, when applied to the facts of this case, mandate a finding in favor of Defendant in this case. *See Birdwell v. City of Gadsden,* 970 F.2d 802, 810 (11th Cir.1992) (stating, based on a review of the relevant caselaw, that "an employee's free time must be *severely restricted* for off-time to be construed as work time for purposes of the FLSA") (emphasis added). Accordingly, Defendant's motion for summary judgment must be and is GRANTED with respect to Count I of the complaint, and Plaintiffs' motion for entry of final summary judgment is DENIED as to Count I.

█ In addition, because we find for Defendant as to past liability, there is no need to impose future injunctive relief. Accordingly, Defendant's motion for summary judgment is GRANTED with respect to Count III, and Plaintiff's motion for entry of final summary judgment is DENIED as to Count III.

### D.

Finally, we address Defendant's motion for summary judgment as to Count II of the Complaint. Count II alleges that Defendant has been retaliating against Lurvey for filing this lawsuit in violation of 29 U.S.C. § 215(a)(3).[8]

Magistrate Judge Brown recommended in his Report and Recommendation of February 9, 1994, that Defendant's motion for summary judgment as to count II be denied. Specifically, Magistrate Judge Brown observed:

> With regard to Count II, there is factual evidence contained in the record from the plaintiffs that supports allegations that reprisals have in fact occurred. While the ultimate weight to be given these statements should be left to a trier of fact, they effectively preclude Summary Judgment on Count II.

Report and Recommendation at pp. 3–4. Neither party objected to the Report and Recommendation with respect to Count II of

8. The original complaint was amended on May 18, 1993, to include Count II.

the complaint. Accordingly, Defendant's motion for summary judgment is DENIED with respect to Count II.

Accordingly, it is hereby

ORDERED and ADJUDGED that Defendant's motion for summary judgment is GRANTED with respect to Counts I and III of the complaint and DENIED with respect to Count II of the complaint. Plaintiffs' motion for entry of final summary judgment on counts I and III as to liability is DENIED.

DONE AND ORDERED.