**James LARGENT, et al., Plaintiffs,**

v.

**EAST ALABAMA WATER, SEWER, AND FIRE PROTECTION DISTRICT, Defendant.**

No. 3:03–CV–876–F.

United States District Court, M.D. Alabama, Eastern Division.

June 17, 2004.

Kenneth, Evan, Riley, Farris, Riley & Pitt, LLP, Birmingham, AL, Nicholas H. Wooten, Wooten & Carlton, PC, Lafayette, AL, for Plaintiff.

Benjamin, Collier, Wilson, Robert C. (Mike) Brock, Rushton, Stakely, Johnston & Garrett, PC, Montgomery, AL, Claud E. (Skip) McCoy, Jr., Johnson, Caldwell & McCoy, Lanett, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

FULLER, Chief Judge.

Five firefighters employed by the East Alabama Water, Sewer, and Fire Protection District (hereinafter "the District") seek additional compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (hereinafter "FLSA") for time spent on call. This cause is now before the Court on the Motion for Summary Judgment (Doc. # 8) filed by the District on March 25, 2004. For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be GRANTED.

### JURISDICTION AND VENUE

Jurisdiction over the claims in this lawsuit is proper under 28 U.S.C. §§ 1331 (federal question) and 29 U.S.C. § 216(b). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

### PROCEDURAL BACKGROUND

On July 22, 2003, James Largent (hereinafter "Largent"), Todd Meacham (hereinafter "Meacham"), Stacy Langley (hereinafter "Langley"), John Cheeney (hereinafter "Cheeney"), and Bobby Parrish (hereinafter "Parrish")[1] filed suit

---

1. When referred to collectively, Largent, Meacham, Langley, Cheeney, and Parrish will be denominated as "Plaintiffs." When re-

ferred to individually, each will be denominated by his surname.

against their employer, the District. Their suit was originally filed in the Circuit Court for Chambers County, Alabama.

Plaintiffs allege that during the course of their employment, they are regularly required to work in excess of forty hours per week. Specifically, Plaintiffs allege that they are generally required to be on call to respond to fire calls for a twenty-four hour period following each of their twenty-four hour active duty shifts. Plaintiffs contend that all of their on call time should be compensated at one and a half times their respective hourly rates of pay pursuant to the FLSA. Plaintiffs' first claim for relief alleges a violation of 29 U.S.C. §§ 207 & 216(b) and seeks an award of unpaid overtime compensation for a period of time commencing two years prior to July 22, 2003. Compl. at ¶¶ 12–15. Plaintiffs' second claim for relief asserts a willful violation of the FLSA and therefore seeks recovery for a period commencing three years prior to the filing of the Complaint. Compl. at ¶¶ 16–20. Plaintiffs' third claim for relief reiterates the previously made claims against "fictitious defendants" who caused Plaintiffs' injuries. Plaintiffs seek unpaid overtime, prejudgment interest, compensatory damages, liquidated damages, attorneys' fees, and such other relief as the Court deems just and proper.

The District was served with Summons and Complaint on July 28, 2003. The District timely removed the case to this Court on August 22, 2003. The District also timely filed its Answer. On March 25, 2004, the District filed its Motion for Summary Judgment (Doc. # 8), which was supported by various evidentiary submissions including: deposition excerpts; time records; census data; departmental memoranda; spreadsheets; deposition excerpts from Plaintiffs' depositions; and an affidavit from Byron Pigg, Chief of the District's fire department (hereinafter "Pigg"). The District also filed a statement of undisputed facts and memorandum of law in support of their motion for summary judgment. *Id.* Plaintiffs submitted a memorandum of law and various evidentiary items in opposition to the District's motion. (Docs. # 14 & 15). The District filed a reply brief. (Doc. # 16). Thus, the motion is now under submission and ripe for disposition.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## NARRATIVE STATEMENT OF FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the plaintiffs, the non-moving parties, establish the following relevant facts:

### A. Structure of the District's Fire Department

The District provides water, sewer and fire protection for portions of Chambers County, Alabama.[2] This lawsuit concerns only the policies of the fire protection division of the District. The District maintains one fire station which is located in the City of Valley.

During the period of time relevant to the issues in this lawsuit, the District has employed nine full-time firefighters: Pigg, the Chief; Captain James Walls (hereinafter "Walls"); Tony Smith (hereinafter "Smith"), Meacham, and Parrish, who each hold the rank of Lieutenant; and Barrett Watson (hereinafter "Watson"), Langley, Cheeney, and Largent, who each hold the rank of Firefighter. Additionally, the District has employed between twelve and twenty volunteer firefighters. These volunteer firefighters are under no obligation to respond to calls, but the District compensates them when they do respond.

### B. Schedule Information For The District's Fire Department

#### 1. Shift Assignments Within The District's Fire Department

Pigg sets the work schedules for the District's fire personnel. Shift assignments are done on a twenty-four hour basis. The staffing procedure in place since 1991 can be generally summarized as twenty-four hours on duty, followed by twenty-four hours on call, followed by twenty-four hours off duty. Each firefighter rotates through a shift cycle such as this one, but adjusts are made when personnel are unavailable to work due to vacation or sick leave.

Unlike the other Plaintiffs, Cheeney has never been participated in the conventional twenty-four hour shift rotations. Instead, his active duty shifts are from 8 a.m. to 5 p.m. In order to maintain his full-time status, Cheeney will occasionally work a full twenty-four hour shift, but he will do so in a fill-in capacity for another firefight-

**2.** The District's fire protection coverage area constitutes approximately twenty-one square miles of east central Chambers County and includes the City of Valley, Alabama. Lafayette and Lannett operate separate and independent fire departments which provide coverage to those municipalities. The Lee Chambers Fire Department provides fire protection services to southeastern Chambers County. Thirteen volunteer fire departments handle the fire protection services for the remainder of Chambers County.

er who has taken vacation or sick leave. Cheeney also regularly takes on call responsibility in place of one of the other firefighters. Cheeney will handle on call duties for a firefighter who would otherwise have that responsibility for a twenty-four hour shift. The firefighter who would otherwise have had that responsibility is relieved from any on call responsibility for the entire twenty-four hour shift. Each firefighter has been relieved of on call responsibility at some point.

## 2. Active Duty Shifts

During an active duty shift, firefighters are in uniform and occupy the fire station. Firefighters on active duty respond to calls and tend to various tasks around the fire station. Generally, two firefighters are on active duty from 8 a.m. to 8 a.m. the following day. From 5 p.m. to 9 p.m. during an active duty shift without calls, firefighters on active duty clean the living areas and then are allowed free time at the station and visits by family members. If there are no calls, firefighters on active duty generally devote the period of time from 9 p.m. until 8 a.m. to sleep.

## 3. On Call Period

Under normal circumstances, active duty firefighters clock out at the end of their active duty shift and begin a twenty-four hour on call period. Generally, there are two on call firefighters per each on call period. The on call firefighter's primary responsibility is to man the station when the active duty firefighters respond to a call so that they are available to go to the scene of the initial call if needed or to respond to a second call should one come in while the firefighters on active duty are still busy responding to the initial call. While on call, firefighters are neither required, nor expected to remain at the fire station premises. Pigg does expect firefighters on call to immediately respond when they are called to the fire station.

For obvious reasons, firefighters must remain sober while on call.

Calls requiring the participation of the District's fire department are generally relayed through a central dispatch unit. The dispatcher has access to a list of personnel indicating which firefighters are on call for a given twenty-four hour period. On call firefighters generally receive notice of a call via their department-issued pager or via telephone. Pigg expects firefighters who are on call to be in a state of readiness. When the dispatcher relays a call requiring the participation of an on call firefighter, a responding firefighter has fifteen minutes from the time of the dispatch to report to the fire station. On call firefighters are permitted to report to the station in casual "street" attire and need not don their uniform or equipment unless ultimately called from the station to the scene of the initial call or of a subsequent call. It is not uncommon for an on call firefighter to cover the station and then be released when the active duty firefighters conclude their response to the initial call. Dispatches to on call firefighters are occasionally cancelled shortly after the on call firefighters are paged and on call firefighters are frequently released within a short period after the page.

## 4. Off Duty Period

At the end of a twenty-four hour period when they are on call, firefighters have a twenty-four hour period when they are off duty. During this time, they are relieved from any responsibility to the District except in rare circumstances such as a disaster situation or unforeseen staffing shortages.

## C. The On Call Policy and Its Purpose

### 1. History of the Policy

Prior to 1991, the District had no specific written policy and procedure regarding

on call staffing. At that time, firefighters worked twenty-four hour shifts and were occasionally required to be on call. The District allowed its firefighters to work out on call staffing on an informal basis.

On August 20, 1991, Pigg issued a departmental memorandum that implemented a specific on call staffing procedure. This policy was mandatory. It provided that either the Chief or the Captain would be on call at all times, but excused them from coming to the station while on call unless they are needed. With respect to Lieutenants and Firefighters, the policy provided that each would be on call the next twenty-four hour shift after their active duty shift and that they report as ordered when called. Each person on call is required to carry their department issued pager and to be within fifteen minute response time to the station. The purpose of the on call policy is to provide adequate coverage for the fire district. Each firefighter is responsible for his on call shift. It is permissible for firefighters to swap on call shifts, however, the firefighter assigned will be held accountable if the person with whom he swapped fails to show up in his stead. Firefighters swapping on call shifts need not give notice to management of the switch. In addition to firefighters swapping shifts with each other, it is undisputed that both Pigg and Walls have occasionally covered on call shifts for firefighters.

On November 30, 1992, the District's management loosened the on call responsibilities under the policy. By a Memorandum dated November 30, 1992, the District created a first call/second call distinction that narrowed the responsibilities of the firefighter designated as second call on an on call shift. The new policy directed that on weekdays, only one firefighter would be on call from the hours of 8 a.m. until 5 p.m. From 5 p.m. until 8 a.m. the following morning, both firefighters would be on call, but only one firefighter would be required to respond and report to the fire station when the active duty firefighters received a call. The exception to this policy was made for structure fire calls and calls paged a second time. Shift leaders, which were often lieutenants, determined the designation of first call and second call.

On March 16, 1994, Pigg amended the policy again and added standby calls and calls involving fire alarms activated in structures to the types of calls that required the participation of both on call firefighters after 5 p.m. In all other respects, the policy was unchanged. On April 27, 1995, Pigg added "mutual aid" calls to the list of calls that required the participation of both on call firefighters after 5 p.m. Mutual aid calls are those involving multiple fire protection services. All other aspects of the on call policy remained the same. On November 6, 2001, Pigg issued a memorandum that placed the firefighter holding second call on call for the full twenty-four hour period. As before, the second call firefighter was only required to respond to the five types of calls set out in the April 27, 1995 memorandum. In the November 2001 memorandum, Pigg explained that the policy change was necessary in light of insufficient day time personnel, an increase in call volume, and an increase in other projects. Pigg noted that he hoped the change would be temporary in nature. The November 6, 2001 iteration of the on call policy is the policy currently in effect in the District's fire department.

## 2. Enforcement

The on-call policy is strictly enforced. Failure to comply with the on call requirement constitutes a Class I Offense for which firefighters would be subject to reprimands. Pursuant to the District's policies, repeated violations of the on call policy could result in the firefighter being

suspended or losing his job. Although the fifteen minute response requirement has been in place for over a decade, only two of the five plaintiffs have been reprimanded for failing to report to the fire station on time. According to his testimony, Langley was last reprimanded for a violation of the fifteen minute response requirement in 1996 or 1997. Parrish was reprimanded orally in 1996 and in writing in February of 2004 for violating the fifteen minute response requirement. Although this rule has been enforced with sanctions for violations, it is also undisputed that firefighters have been occasionally granted relief from the fifteen minute rule in situations involving extenuating circumstances.

### 3. Pay for On Call Shifts

This dispute arises over the pay on call firefighters receive. Plaintiff contend that they should be paid 1.5 times their regular rate for each hour in every twenty-four hour period they are required to be on call. It is undisputed that the District pays firefighters a flat rate of $15 per on call shift whether or not they are called to work during the on call shift. Moreover, it is undisputed that on call firefighters who are called to work during an on call shift are paid are paid one and one half times their base pay rate from the moment they are paged until the time that they clock out after having been released. It is also undisputed that an on call firefighter called to work during an on call shift receive a minimum of 1.5 hours of overtime pay per call even when the calls require them to work less than 1.5 hours.

The firefighters made a written request for an increase in on call pay in September of 2001. In this written request, firefighters explained that the fifteen minute response time restricted them and interfered with family matters. The District denied this request.

### 4. Frequency of On Call Dispatches Per Firefighter

The number of times firefighters on call receive dispatches requiring them to report to the fire station while on call varies from day to day. During some of the twenty-four hour periods, on call fire fighters receive multiple pages to come to the fire station; at other times, they receive no pages. Plaintiffs have not provided any specific calculations of the number of times they have been called in to the station while on call. Instead, they testified about their rough estimates of the average number of times they are called in to the station.

The District has submitted the official payroll records for Plaintiffs. In this case, these official payroll records are time cards. Pigg has verified that the records submitted are true and correct copies of the District's business records. The District has also submitted spreadsheets which Pigg generated for the purposes of this litigation. Each spreadsheet provides detailed information as to the number of days on call, number of times called in while on call, hours paid, and hours worked while on call for a given two-week pay period. At the bottom of each spreadsheet, each firefighter's average number of call ins per twenty-four hour on call shift, average time spent per call in, and average time paid per call in is provided.

Pigg's spreadsheets indicate that the highest average number of call ins for any of Plaintiffs on a given twenty-four hour on call shift is 0.71. Plaintiffs average call backs per twenty-four hours on call were as follows:

| Firefighter | 7/2002 to 7/2003 | 7/2001 to 7/2002 | 7/2000 to 7/2001 |
|---|---|---|---|
| Cheeney | .16 | .49 | .43 |
| Langley | .32 | .69 | .62 |
| Largent | .58 | .71 | .49 |
| Meacham | .58 | .71 | .61 |
| Parrish | .50 | .71 | .57 |

The average time spent per call in is between thirty minutes and just over one hour. The highest average time expended per call was Langley's one hour and twenty-six minute average for the period of July 2001 through July 2002.

The District has also submitted a yearly summary Pigg compiled of each firefighter's days on call and the number of times each was called in. These summaries demonstrate that each of the firefighters has received zero call backs on the majority of their days on call. The charts below summarize the information Pigg compiled from the District's time cards for each Plaintiff:

### July 28, 2000 through July 26, 2001

| Firefighter | Total days on call | Periods with 0 call ins | Periods with 1 call in | Periods with 2 call ins | Periods with 3 or more call ins |
|---|---|---|---|---|---|
| Meacham | 101 | 54 | 34 | 11 | 2 |
| Langley | 98 | 53 | 36 | 5 | 4 |
| Cheeney | 96 | 63 | 25 | 8 | 0 |
| Largent | 112 | 71 | 29 | 10 | 2 |
| Parrish | 96 | 55 | 29 | 10 | 2 |

### July 27, 2001 through July 25, 2002

| Firefighter | Total days on call | Periods with 0 call ins | Periods with 1 call in | Periods with 2 call ins | Periods with 3 or more call ins |
|---|---|---|---|---|---|
| Meacham | 91 | 46 | 30 | 11 | 4 |
| Langley | 108 | 61 | 25 | 14 | 5 |
| Cheeney | 90 | 58 | 23 | 6 | 3 |
| Largent | 107 | 58 | 32 | 11 | 6 |
| Parrish | 108 | 55 | 36 | 11 | 6 |

### July 26, 2002 through July 24, 2003

| Firefighter | Total days on call | Periods with 0 call ins | Periods with 1 call in | Periods with 2 call ins | Periods with 3 or more call ins |
|---|---|---|---|---|---|
| Meacham | 101 | 52 | 39 | 10 | 0 |
| Langley | 99 | 72 | 23 | 3 | 1 |
| Cheeney | 107 | 92 | 13 | 2 | 0 |
| Largent | 102 | 58 | 33 | 8 | 3 |
| Parrish | 105 | 66 | 30 | 5 | 4 |

## 5. Impact of the On Call Policy on Firefighters

Plaintiffs have testified that the on call policy interferes with their lives in a variety of ways. Some have had to decline invitations to family functions. Some have had to leave family functions and dental appointments when paged to duty. While all Plaintiffs have successfully maintained other work in addition to their employment with the District as firefighters, they have had to find employers who would be understanding about the on call policy or start their own businesses. Some de-

scribed leaving behind family members to respond to a call and leaving behind jobs unfinished or carts full of groceries. Plaintiffs complain about having to take two vehicles when they travel with family members on days on which they are on call to avoid having to abandon their family members without transportation should they have to respond to a call. Plaintiffs complain about difficulties they have experienced in making arrangements for health care appointments and child care due to their on call responsibilities. Plaintiffs complain that the fifteen minute response time means that during periods in which they are on call they cannot leave a certain geographic area which precludes them from eating or shopping in other areas, visiting friends or family members outside the area, attending events outside the area, and coaching teams which travel outside the area.[3]

It is undisputed that despite the inconvenience about which Plaintiffs complain, they can and have engaged in a number of personal activities during periods in which they have been on call. Specifically, on call firefighters can sleep, watch television, read, work in their yards or on their personal vehicles, take walks, go out to eat, go out shopping, cook at home, and visit with friends and relatives. Additionally, each of the plaintiffs has maintained a second job during most of the period at issue in this litigation. Largent has a painting and home repair business, and he has worked for others in construction and hardware sales. Langley runs a handyman service, and he has also worked for a local construction company, delivered pizzas, and assembled consumer goods for Wal–Mart. Parrish runs his own floating dock con-

struction company. Cheeney works for Lanett Fire/EMS. He has also held positions at a local gas station and at a spa. Meachem has occasionally worked with Largent and has held a variety of other jobs. Watson, a firefighter for the District's fire department maintains multiple part time jobs including serving as a disk jockey, operating a limousine service, operating a pressure washing service, and doing construction. While Watson is not a plaintiff in this action, he is subject to the same schedule as Plaintiffs.

## DISCUSSION

The FLSA governs minimum wage and overtime requirements for employees covered under the act. The FLSA requires overtime pay to covered employees at the rate of one and one half times an employee's base rate of pay for hours worked in excess of the statutorily set amount. Most employees covered by the FLSA are entitled to overtime compensation for "a workweek longer than forty hours." 29 U.S.C. § 207(a)(1). Section 207(k) of the FLSA, however, provides an exemption to the strict forty hour workweek for "any employee in fire protection activities." 29 U.S.C. § 207(k). This exemption allows public agencies employing persons engaged in fire protection activities to calculate an employee's hours for overtime purposes according to work periods of twenty-eight days rather than on a weekly basis and sets a calculable threshold for the commencement of compensation at an overtime rate. See 29 U.S.C. § 207(k).

The issue this case presents is whether Plaintiffs are entitled to be compensated for time they spend on call. The FLSA

3. Langley and Parrish complain about having to drop out of colleges courses because of the on can policy. Parrish also complained that his daughter could not continue her dance lessons in LaGrange, Georgia, because he could not transport her to lessons when he was on call. It is undisputed that these events occurred outside of the time frame covered by this litigation.

itself does not define "work" for purposes of calculating whether overtime compensation is due. At least one court in the Eleventh Circuit has concluded that the FLSA "addresses compensation of on call time at only the most general of levels." *Lurvey v. Metropolitan Dade County*, 870 F.Supp. 1570, 1575 (S.D.Fla.1994).

The Department of Labor is charged with implementing the FLSA and promulgating regulations to that end. The applicable regulations do address the distinction between on call time which is compensable and on call time which is not compensable. Specifically, the regulations provide that

> [a]n employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. *Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.*

29 C.F.R. § 553.221(d) (emphasis added).

The United States Supreme Court decided two cases in the 1940s which addressed whether waiting time could be classified as compensable work under the FLSA. *See, e.g., Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

These cases establish what is commonly referred to as the "waiting to be engaged" doctrine. In both *Armour* and *Skidmore*, the United States Supreme Court declined to offer any bright-line rules for determining the circumstances under which overtime compensation should be awarded for on call time. Instead, distinguishing between being "engaged to wait," which is compensable, and "waiting to be engaged," which is not compensable, the Supreme Court held that time spent waiting for work is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Armour*, 323 U.S. at 132, 65 S.Ct. 165; *Skidmore*, 323 U.S. at 137, 65 S.Ct. 161. This determination is dependent upon all the circumstances of the case. *Id.* at 133, 65 S.Ct. 161. *Accord, Skidmore*, 323 U.S. at 140, 65 S.Ct. 161.

In *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802 (11th Cir.1992), the Eleventh Circuit Court of Appeals addressed the issue of compensation for time during which police detectives could have been called to duty. 970 F.2d at 807. *Birdwell* involved claims by city police detectives for overtime compensation for a one-week period during which they were on call due to a strike by other city employees. *Id.* at 804. During the on call period, the detectives were instructed to be prepared to report to work immediately. *Id.* They could go home and they were not required to remain at the police station, but they could not leave their homes unless they left a forwarding number or they owned a beeper. *Id.* at 808. The detectives were prohibited from leaving town, drinking, going on vacation, or using compensatory time during the on call period. *Id.* at 804 & 808. Some detectives testified that they could not go on outings with their families unless they took two cars. *Id.* at 808. Detectives without beepers could not participate in outdoor activities such as fishing

or hunting. *Id.* at 808. Despite the restrictions, several detectives worked two jobs, and none of them testified that they could not use their time at home as they wished. *Id.* The city argued that the officers were not working during this time for purposes of the FLSA and thus were not entitled to compensation. 970 F.2d at 807.

The district court denied the city's motion for judgment as a matter of law and allowed the issue to be submitted to the jury, which found in favor of the police detectives. *Id.* The Eleventh Circuit Court of Appeals reversed and found that the city was entitled to judgment in its favor. *Id.* at 810. Despite the restrictions placed on the police detectives by the on call policy, the Eleventh Circuit Court of Appeals found that their on call time "was not used predominantly for the employer's benefit." *Id.* at 808. Although this case did not involve firefighters, it unquestionably presents the analytical roadmap which this Court must follow to evaluate Plaintiffs' claims in this case.

The Eleventh Circuit Court of Appeals explained that

[w]hen employees are engaged to wait for the employer's call to duty, this time may be compensable under the FLSA. The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employees may use the time for personal activities. This question has been formulated as whether the time is spent predominantly for the employer's benefit or for the employee's. This question is dependant upon all the circumstances of the case.

*Birdwell,* 970 F.2d at 807 (internal citations and quotations omitted). The emphasis on the circumstances of the case does not mean, however, that every such question is one for a trier of fact. *Id.* Indeed, "[w]hether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law." *Id.* When deciding whether on call time was compensable under the FLSA in *Birdwell,* the Eleventh Circuit began by citing a United States Supreme Court decision and explaining that a court making such a determination should examine:

the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.

*Birdwell,* 970 F.2d at 808 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). Perhaps realizing that such a statement was rather broad and general, the Eleventh Circuit then discussed a number of cases from various jurisdictions which addressed the issue. *Birdwell,* 970 F.2d at 810. Based on its review of these cases, the Eleventh Circuit concluded that "an employee's time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Id.* at 810.

Plaintiffs argue that this Court should consider twelve factors in determining the compensability of on call time in this case. The twelve factors Plaintiffs enumerate are as follows: (1) whether the time is spent predominantly for the employer's benefit or for the employee's benefit; (2) whether the employees are engaged to wait for the employer's call to duty; (3) whether there are excessive geographical restrictions on the employees' movements while on call; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the employee could easily trade on call responsibilities; (6) whether there is an on premises living requirement; (7) whether the call frequency was unduly restrictive; (8) whether the use of a pager could ease restrictions; (9) whether the

employees had actually engaged in personal activities while on call; (10) whether the response is mandatory; (11) the nature of the employment and its relationship to waiting time; and (12) all the surrounding circumstances. (Doc. # 14 at p. 8). Plaintiffs arrived at this list of twelve factors from their review of *Armour, Skidmore, Birdwell,* and the cases cited in *Birdwell.* The Court will assume without deciding that these factors which Plaintiffs' argue are the relevant sub-factors for it to consider in determining whether Plaintiffs were engaged to wait or waiting to be engaged. While federal courts addressing this type of issue have enumerated the relevant factors in a variety of ways, it is clear that the two most important factors to consider are "(1) the degree to which the employee is free to engage in personal activities and (2) the agreements between the parties." *Lurvey,* 870 F.Supp. at 1576 (collecting cases). Before balancing these factors, it is important to note that it is not necessary for every factor to work in the employer's favor for the balance of factors to require a finding as a matter of law that the on call time does not constitute work within the meaning of the FLSA. *Id.* at 1576.

Viewed as a whole, the record before this Court presents a factual predicate for the conclusion that the time on call is spent predominantly for the employee's benefit, rather than for the District's benefit. This is especially true given the large number of days on call when the firefighters are not called to work and the relatively brief amount of time that they spend on average when called in to work. Moreover, it is undisputed that all Plaintiffs have been able to be employed with other employers and pursue personal interest despite the on call requirement. Similarly, these facts make it plain that the firefighters are waiting to be engaged while on call rather than engaged to wait. Thus, the first two factors balance in favor of a finding that the time is not compensable under the FLSA.

The on call policy contains no geographic restriction on its face. For example, the firefighters are not required to stay within a certain city or county, nor are they required to stay at their homes. While it is true that the response time could be said to impose a *de facto* geographic limitation on the firefighters because they have to be within fifteen minutes of the fire station while on call, such a conclusion is unwarranted, however, because this issue is adequately addressed by another factor in the test. Thus, the lack of a geographic restriction in the on call policy factor balances in favor of a finding of the District.

The Court next considers whether the on call policy imposes a short, fixed response time. It is undisputed that the response time fixed by the on call policy is fifteen minutes. This short fixed response time is a factor which weighs in Plaintiffs' favor.

The next factor for the Court's consideration has to do with the ability of the firefighters to trade on call responsibility. When on call employees can trade on call responsibilities, the "curtailment of personal activities may be somewhat alleviated." *Lurvey,* 870 F.Supp. at 1581. The on call policy at issue in this case does not prohibit firefighters from trading on call responsibility and the evidence is undisputed that they have been able to do so. The Court finds this factor balances in favor of a finding that the time should not be compensable. It is undisputed in this case that the District has no on premises living requirement as a part of its on call policy. A requirement that employees remain on the employer's premises during on call time is indicative that the employees are engaged to wait. This factor favor weighs in the District's favor.

The Court next must analyze whether the call frequency was unduly restrictive. The Court has considered the extensive information submitted by the District and verified by Pigg regarding the call frequency. The Court has also considered the impressions of Plaintiffs about call frequency which was presented in their deposition testimony, which are wholly consistent with the information submitted by the District. The Court has also considered the fact that Pigg expects the firefighters to be in a state of readiness while on call. Even viewing the facts in the light most favorable to Plaintiffs, the Court cannot say that the call frequency was unduly restrictive. This factor weighs in the District's favor.

It is undisputed that the District issues pagers to its fire personnel. The District uses the pages to send dispatches to on call firefighters. Thus, the District has already taken steps to encourage the use of pagers to reduce the intrusiveness of the on call system. Firefighters need not monitor radio transmissions or stay near a telephone while on call; they simply must carry the pagers provided by their employer. The District has not imposed the costs of obtaining the pagers on the employees. The Court finds this factor weighs in the District's favor.

While Plaintiffs complain that some personal activities are unavailable to them because of the strictures of the on call policy, it is undisputed that the employees had actually engaged in personal activities while on call. Plaintiffs are able to spend time with family, watch television, sleep, exercise, go shopping, work outside their homes, and engage in a variety of other activities. The Court finds that Plaintiffs were able to engage in personal activities while on call and that this factor weighs in the District's favor.

Response to calls received while on call is mandatory. This factor weighs in Plaintiffs' favor.

The nature of the employment and its relationship to waiting time and all the surrounding circumstances are the remaining factors. Plaintiffs appear to argue that one additional thing which this Court should consider, perhaps as part of the surrounding circumstances is whether the policy was implemented and used simply to reduce the cost of labor and whether the District should hire another firefighter. Additionally, Plaintiffs appear to argue that the nature of their employment as firefighters and its relationship to waiting time imposes greater restrictions on them because they have to be in a constant state of readiness. While this is true to an extent, it is worth noting that when called in, firefighters generally are called in to man the fire station rather than to proceed directly to firefighting and they need not don their equipment and uniforms to respond to a call. The Court has considered all Plaintiffs' arguments and it is not persuaded that these final factors weigh in Plaintiffs' favor.

When all factors are considered as a whole, the Court finds as a matter of law that the conditions placed upon Plaintiffs' on call time were not so onerous as to mandate compensation under the FLSA. The majority of the factors favor the District's position. Because Plaintiffs are able to spend their on call time away from the employer's premises engaging in a wide range of personal activities, the most important factors also support the District's position. However, before ruling on the District's motion, the Court will first consider two specific cases on which Plaintiffs heavily relied.

In opposition to the District's motion for summary judgment, Plaintiffs place heavy reliance on two non-binding cases: *Cross*

v. *Arkansas Forestry Comm'n,* 938 F.2d 912 (8th Cir.1991) and *Renfro v. City of Emporia,* 729 F.Supp. 747 (D.Kan.1990), *aff'd* 948 F.2d 1529 (10th Cir.1991). This Court is not persuaded by Plaintiffs' arguments based on these cases which presented important factual differences from Plaintiffs' case.

The Eighth Circuit Court of Appeals did hold in *Cross* that summary judgment was inappropriately granted on the plaintiff firefighters' claims that they were entitled to overtime compensation pursuant to the FLSA for time spent on call, but it did so on a fact pattern markedly different from the facts of this case. First, the firefighters in *Cross* were on call twenty-four hours a day seven days a week. 938 F.2d at 917. Second, the firefighters in *Cross* were required, while on call, to actively and continuously monitor radio transmissions and were not called in for duty using a telephone or a pager. *Id.* The Eighth circuit itself recognized that these two factors made the *Cross* case "unlike typical 'on-call' cases." *Id.* Indeed, both these factors make the *Cross* case sufficiently unlike this case to render *Cross* irrelevant to the disposition of this case.

Similarly, this Court finds that the *Renfro* case is distinguishable from the case at bar. In *Renfro,* the plaintiff employees were firefighters who were on call for twenty-four hour periods. During those periods they were required to wear and respond to beepers by returning to work within twenty minutes of the time they were paged. The Tenth Circuit held that under the FLSA the employees were entitled to compensation for the on call waiting periods. In reaching this holding, the Tenth Circuit stressed the frequency with which the firefighters were called during a twenty-four hour period: an average of three to five times. Due to the frequency of the calls, the Court concluded that the firefighters could not use the time effec-tively for personal pursuits. While this case has some obvious similarities to the case before this Court, it does not share the factor which the Tenth Circuit found most significant, namely, the high frequency of calls during on call periods.

Having reviewed and applied the relevant law to the undisputed facts of this case, the Court is persuaded that no genuine issue exists as to any material fact. Furthermore, the Court finds that the District is entitled to judgment as a matter of law on all of Plaintiffs' claims because during on call periods Plaintiffs are waiting to be engaged, rather than engaged to wait.

## CONCLUSION

For the foregoing reasons, the Court finds that the District is entitled to judgment as a matter of law and that no genuine issues of material fact exist precluding the entry of summary judgment in the District's favor. Accordingly, it is hereby ORDERED as follows:

(1) The Motion for Summary Judgment (Doc. # 8) filed by the District on March 25, 2004 is GRANTED.

(2) The pretrial conference and trial in this cause are hereby CANCELLED.

(3) A separate judgment will be entered in the District's favor taxing costs against Plaintiffs.